UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| SUSAN BAKER, *et al.*,<br><br>　　　　　　　　　　Plaintiffs,<br>　v.<br>DEAN MEILING, *et al.*,<br>　　　　　　　　　　Defendants. | Case No. 3:20-cv-00518-MMD-CLB<br><br>ORDER |

## I.   SUMMARY

Plaintiffs, a putative class of elderly investors in a company formerly known as Metalast, sued Defendants, the people and entities that either bought that company out of receivership, or played a role in the receivership proceedings, in California state court, for a purported fraudulent scheme and conspiracy to take Metalast through receivership so some Defendants could buy it at a discounted price, causing Plaintiffs to lose all the money they invested in Metalast. (ECF No. 1-3.) Certain Defendants removed this case to the Central District of California (ECF No. 1), and then moved to transfer it to this Court (ECF No. 13). Judge Josephine L. Staton of the Central District of California granted Defendants' motion to transfer, and transferred the case to this Court. (ECF No. 52.) Before the Court is Plaintiffs' motion to remand this case back to California state court (ECF No. 62 ("Remand Motion")),[1] and Plaintiffs' corresponding motion requesting the Court address

---

[1] Defendants Chemeon Surface Technology LLC, DSM P GP LLC, DSM Partners, LP, Dean Meiling, Madylon Meiling, Meiling Family Partners, Ltd., Suite B LLC (collectively, the "Chemeon Defendants") filed a response. (ECF No. 76.) So did Defendants Armstrong Teasdale LLP, Janet Chubb, and Tiffany Schwartz (collectively, the "Attorney Defendants"). (ECF No. 84.) Plaintiffs filed replies. (ECF Nos. 95, 96.)

the Remand Motion before it addresses other pending motions[2] (ECF No. 72).[3] As further explained below, the Court will deny the Remand Motion because minimal diversity exists, and Defendants have met their preponderance burden to show there are more than 100 potential members of the proposed class.

## II.  BACKGROUND

As mentioned, Plaintiffs' core allegation in this case is that Defendants engaged in a "fraudulent scheme" to take Metalast through receivership and buy it at a discount, depriving Plaintiffs of their investments in Metalast in the process. (ECF No. 1-3.) This is the third such case before this Court; Plaintiffs' counsel is involved in all three. By filing date, the oldest case is *Alexander v. Meiling*, Case No. 3:16-cv-00572-MMD-CLB (D. Nev. Filed Oct. 3, 2016). More recent is *Harris v Meiling*, 3:19-cv-00339-MMD-CLB (D. Nev. Filed Jun. 19, 2019). The Court dismissed *Alexander* in its entirety based on the litigation privilege. *See* 2020 WL 4193998 (D. Nev. July 21, 2020). Plaintiffs appealed that decision; the appeal is currently pending. *See Alexander*, Case No. 3:16-cv-00572-MMD-CLB, ECF No. 193. Like this case, Plaintiffs' counsel originally filed *Harris* in California state court, but Defendants removed it to the Central District of California, and it was subsequently transferred here by Judge Staton. *See Harris*, 3:19-cv-00339-MMD-CLB, ECF Nos. 1, 33. The Court dismissed *Harris* in its entirety on statute of limitations grounds. *See* 2019 WL 5684175 (D. Nev. Oct. 31, 2019). Plaintiffs did not appeal that dismissal.

As pertinent to the Remand Motion, the named Plaintiffs in the Complaint are residents of California and Nevada. (ECF No. 1-3 at 5-6.) The Complaint does not specify

---

[2]The Court will address the other currently pending motions in this case in a subsequent order. (ECF Nos. 61, 65, 67.)

[3]The Court denies this motion as moot because the Court is addressing the Remand Motion before the other pending motions. However, the Court notes that Plaintiffs' motion violates several local rules. *See* LR 7-2(a); LR IA 7-2; LR 78-1. The Court is already considering sanctioning Plaintiffs' counsel, in part for his noncompliance with the local rules (ECF No. 105.) Thus, the Court admonishes Plaintiffs' counsel and local counsel to review both the local rules and this Court's standing order, and comply with them going forward. If Plaintiffs' counsel and local counsel continue to violate the Court's local rules, the Court will consider additional and escalating sanctions.

2

the citizenship of Defendants Dean and Madelyn Meiling. (*Id.* at 6.) Plaintiffs further allege that Defendant Meiling Family 26 Partners, Ltd. is a Colorado limited partnership. (*Id.*) The Complaint does not specify the citizenship of Defendants James Proctor, Janet Chubb, and Tiffany Schwartz. (*Id.* at 7.) Plaintiffs further allege "Defendant Armstrong Teasdale, LLP is a duly formed Missouri limited liability partnership and law firm." (*Id.*) The remaining Defendants are Nevada business entities of various types. (*Id.*)

Plaintiffs allege that over 900 people invested in Metalast. (*Id.* at 13.) The Complaint defines the proposed class as follows:

> All members, investors, and their successors, in Metalast International, LLC subsequently named MI94, LLC, ("Investment LLC"), the largest proportion of whom are residents of California, together with the elderly Class members who are residents off [sic] Nevada, who owned membership interests and were at least 65 years old at the time of the conduct alleged herein, which has continued to date. Plaintiffs are informed and believe that said Class comprises less than 100 members.
>
> Excluded from the Class are all Metalast members and investors, and their successors, who are residents of states other than California and Nevada, as well as Defendants, Defendants' officers, members, owners, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns, and any entity in which any Defendant has a controlling interest, as well as all judicial officers and staff presiding over this matter and counsel of record. Also specifically excluded from the Class is Marc Harris, an individual who resides in Orange County, California, and was representative plaintiff of the class in the action styled *Marc Harris, et al. v. Dean Meiling, et al.*, Case No.: 8:19-cv-00595-JLS-SEM, originally filed in the United States District Court - Central District of California, Southern Division. Also specifically excepted from the Class are any named Plaintiffs in the action styled *Jerry Alexander, et al. v. Dean Meiling, et al.*, Case No.: 3:16-cv00572-MMD-CBC, filed in the United States District Court – District of Nevada. Plaintiffs reserve the right to revise the Class Definition as a result of discovery proceedings and further investigation

(ECF No. 1-3 at 9-10.)

Defendants' notice of removal added information about the parties' citizenship and the number of putative class members. (ECF No. 1.) Specifically, as to citizenship, Defendants added that "Janet Chubb is a resident of Nevada and defendant Tiffany Schwartz is a resident of Missouri." (*Id.* at 5.) As to the number of putative class members, Defendants pointed to representations Plaintiffs' counsel made, and evidence he submitted, in *Alexander* and *Harris* to support Defendants' allegation that, despite

3

Plaintiffs' claim in this case that the class "comprises less than 100 members" (ECF No. 1-3 at 10), there are well over 100 members in Plaintiffs' putative class. (ECF No. 1 at 5-7.) Basically, Defendants state in their notice of removal that, in *Alexander* and *Harris*, Plaintiff's counsel and Marc Harris (the lead named Plaintiff in *Harris*, and a class representative in *Alexander*) submitted sworn declarations estimating the number of class members as between 143 and over 500. (*See id.*)

Plaintiffs then filed two declarations in support of their Remand Motion, one from Plaintiffs' counsel, and the other from Mr. Harris, where they swear under penalty of perjury that the proposed class consists of up to 98 plaintiffs. (ECF Nos. 62-1, 62-1.) Mr. Harris states that he maintains and updates "the 'Investment LLC' Member database of over 900 Member interests representing over 1,200 individuals (including spouses, heirs, beneficiaries, and even deceased members) residing in approximately forty-five (45) U.S. states." (ECF No. 62-1 at 2.) He also states he maintains and updates a related Microsoft Excel spreadsheet. (*Id.*) Mr. Harris goes on to explain that he now believes up to 98 is the best number of potential plaintiffs, and reconciles his current belief with his previous sworn estimate of 143, and another sworn estimate of 232 Plaintiffs' counsel made based on information provided by Harris. (*Id.* at 2-4.) The big difference is that, on Plaintiffs' counsel's advice, Mr. Harris has now decided to exclude from the potential class: (1) non-member spouses of members; (2) deceased individuals; (3) people who were not age 65 before December 1, 2013; and (4) "beneficiaries of Membership interests that were held in assert [sic] protection vehicles." (*Id.* at 2-4.) He also says he gave Plaintiffs' counsel a copy of the Microsoft Excel document he has been maintaining. (*Id.* at 3-4.)

Plaintiffs' counsel's declaration is largely complementary to Mr. Harris' declaration, essentially proffering the same facts and rationale from Plaintiffs' counsel's perspective. (ECF No. 61-2.) Plaintiffs' counsel explains that the main difference between the up to 98 number he and Mr. Harris now proffer and the number of potential plaintiffs they previously offered in *Harris* is that he decided not to include the four categories of potential plaintiffs referenced above. (*Id.* at 3; *see also id.* at 3-5.) Plaintiffs' counsel goes on to state that Mr.

4

Harris gave him a copy of the Excel spreadsheet, "which I have since closely scrutinized, examined and scoured in connection with my determination of the numerosity element in this action[.]" (*Id.* at 3.)

Then, in opposing the Remand Motion, Chemeon Defendants proffered additional evidence of their own. First, the Chemeon Defendants remind the Court Plaintiffs' counsel either serves as counsel or filed two other cases[4] against people and entities involved in Metalast, and that both of these cases included Mr. Harris as a class representative. (ECF No. 76 at 7.) In one of those cases, Mr. Harris stated in discovery responses that he had destroyed any and all information he ever had about Metalast. (*Id.* at 7-9 (citing ECF Nos. 76-2, 76-3).) Further, in his deposition taken in 2016, Mr. Harris testified he had destroyed his Metalast records. (ECF No. 76 at 9 (citing ECF No. 76-4).) Mr. Harris also testified at his deposition that there was a company database listing all of Metalast's investors, but he never had access to it, and he nonetheless estimated that over 900 people had invested in Metalast, about half of them retirees. (*Id.*) Second, the Chemeon Defendants point out that in *Harris*, Plaintiffs' counsel changed his guess as to the number of potential class members (of a class defined in a nearly identical way to the class in this case) from over 500 to under 100, to 143, to 195, apparently as it suited him. (*Id.* at 10-11.) Third, as to minimal diversity, the Chemeon Defendants proffer declarations from Ms. Chubb and Ms. Schwartz stating they are citizens of Nevada, and Missouri, respectively. (*Id.* at 13 (citing ECF Nos. 36-2, 36-3).) Fourth, again as to numerosity, the Chemeon Defendants point out "that the receiver, James Proctor, used [a master service list] for service purposes in connection with the 2013 MILLC receivership proceeding, which master list contained a total of at least 990 MILLC members." (*Id.* at 17 (citing ECF No. 77-2 at 18-45).)

In sum, the parties have presented conflicting evidence as to whether the minimal diversity and numerosity requirements for the Court to exercise CAFA jurisdiction are

---

[4]There are actually even more cases than that. *See, e.g., Harris*, 2019 WL 5684175, at *1.

satisfied here. Further, all parties view this case as part of a sequence of similar cases (as does the Court). Finally, the Court notes that Judge Staton transferred this case to this Court in part because she determined Plaintiffs' counsel was engaged in "blatant forum shopping," and was seeking to avoid the Court's unfavorable rulings in *Alexander* and *Harris* in filing yet another similar class action in California state court, opposing transfer to this Court, and seeking to have this case remanded back to state court. (ECF No. 52 at 8.)

### III.   LEGAL STANDARD

Federal courts are courts of limited jurisdiction, having subject matter jurisdiction only over matters authorized by the Constitution and Congress. *See* U.S. Const. art. III, § 2, cl. 1; *see also, e.g.*, *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A suit filed in state court may be removed to federal court if the federal court would have had original jurisdiction over the suit. *See* 28 U.S.C. § 1441(a). Here, Defendants removed under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), which, in pertinent part, vests federal district courts with "original jurisdiction to hear a class action if the class has more than 100 members, the parties are minimally diverse, and the matter in controversy exceeds the sum or value of $5,000,000." *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013) (citing 28 U.S.C. § 1332(d)(2), (d)(5)(B)) (internal quotation marks omitted).

"[N]o antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014) (citing *Standard Fire*, 568 U.S. at 595). "CAFA's provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant." *Id.* (citations and internal quotation marks omitted).

"[A] defendant seeking to remove a case to a federal court must file in the federal forum a notice of removal containing a short and plain statement of the grounds for removal." *Id.* at 87. (internal quotation marks and citations omitted). Where, as here (ECF

No. 62), a plaintiff factually challenges the defendants' statements in their notice of removal, "both sides submit proof and the court decides, by a preponderance of the evidence" whether CAFA's jurisdictional requirements are satisfied. *Id.* at 88. Generally speaking, the party opposing the factual attack—here, Defendants—must support their "jurisdictional allegations with competent proof, under the same evidentiary standard that governs in the summary judgment context." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (internal quotation marks and citations omitted); *see also id.* at 1122.

## IV. DISCUSSION

Plaintiffs make two main arguments in their Remand Motion. Neither is persuasive. The Court will first briefly address Plaintiffs' argument that Defendants insufficiently alleged minimal diversity when they removed this case, and then address Plaintiffs' attempt to cap the number of members of the proposed class at 98, to which the parties' devote much of their argument.

### A. Minimal Diversity

Plaintiffs argue the Court should remand this case for lack of minimal diversity because Defendants did not specify the citizenships of all Defendants in their notice of removal, and while Defendants did state that Defendants Chubb and Schwartz are residents of Nevada and Missouri, respectively, Defendants' notice of removal is nonetheless fatally defective because it did not specify Chubb and Schwartz are citizens of those states. (ECF No. 62 at 20-22.) The Chemeon Defendants respond that the citizenships of all parties to this case are immaterial because Plaintiffs themselves establish minimal diversity by alleging they are residents of California and Nevada (depending on the person), Chubb and Schwartz are both residents and citizens of Nevada and Missouri, and Defendants' notice of removal is either not fatally defective because it used 'resident' instead of 'citizen,' or the Court could grant them leave to amend their notice to clarify Chubb and Schwartz are citizens of those states. (ECF No. 76 at 23-25.) Attorney Defendants make a similar argument. (ECF No. 84 at 12-14.) The Court agrees with Defendants.

Minimal diversity is present here. Plaintiffs allege they are residents of California and Nevada, and have not subsequently offered any contradictory argument or evidence. (ECF No. 1-3 at 5-6.) Defendants proffered declarations from Chubb and Schwartz stating they are citizens of Nevada and Missouri (ECF Nos. 36-2, 36-3), which aligns with, and builds upon, the statements in the notice of removal that they are residents of those states (ECF No. 1 at 5). This is enough information for the Court to conclude CAFA's minimal diversity requirement is satisfied. *See* 28 U.S.C § 1332(d)(2)(A) (defining minimal diversity as where "any member of a class of plaintiffs is a citizen of a State different from any defendant"). Relatedly, Plaintiffs' argument that the parties have not provided full citizenship information for each and every Plaintiff and Defendant is beside the point. (ECF No. 62 at 21-22.) *See also Mondragon v. Capital One Auto Fin.*, 736 F.3d 880, 882 (9th Cir. 2013) ("Through CAFA, Congress broadened federal diversity jurisdiction over class actions by, among other things, replacing the typical requirement of complete diversity with one of only minimal diversity[.]"). In sum, the Court rejects Plaintiffs' arguments as to minimal diversity.

### B.   Numerosity

Plaintiffs primarily argue removal was improper because they allege in their Complaint that they "are informed and believe that said Class comprises less than 100 members." (ECF No. 62 at 15-16 (citing in pertinent part ECF No. 1-3 at 10).) Because CAFA jurisdiction requires more than 100 putative class members, and Plaintiffs are the 'masters of their Complaint,' Plaintiffs argue the Court must remand this case. (ECF No. 62 at 14-16.) Plaintiffs then offer an explanation supported by declarations as to why Plaintiffs' counsel and Mr. Harris' prior estimates putting the basically identical classes at issue in *Alexander* and *Harris* well over 100 were inaccurate, and why their current estimate of up to 98 members is. (*Id.* at 16-18.) Defendants generally counter that: (1) the Court should err in favor of exercising jurisdiction here, especially because Plaintiffs are blatantly forum shopping; (2) the preponderance of the evidence shows that the putative class size is more than 100; (3) the declarations submitted by Plaintiffs' counsel and Harris

violate the best evidence rule, consist primarily of inadmissible hearsay, and are otherwise unreliable; and (4) even as defined by Plaintiffs, the putative class numbers more than 100. (ECF No. 76 at 15-23, 84 at 7-12.) The Court fully agrees with Defendants.

To start, Plaintiffs' numerosity argument rests on several incorrect legal premises. Specifically, Plaintiffs urge the Court to apply a presumption against removal here. (ECF No. 62 at 12-13.) However, no such presumption applies. *See Dart Cherokee*, 574 U.S. at 89 ("no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court."). Plaintiffs also argue they are the masters of their Complaint, but that principle is subject to a few important limitations Plaintiffs neglect to mention. In pertinent part, Plaintiffs rely on several CAFA mass action cases to support that proposition, which the Ninth Circuit has instructed must be treated differently than this CAFA class action. (ECF Nos. 1-3 (making class action allegations), 62 at 15 (making the argument, primarily relying on *Corber v. Xanodyne Pharm., Inc.*, 771 F.3d 1218 (9th Cir. 2014) (en banc) and *Dunson v. Cordis Corp.*, 854 F.3d 551 (9th Cir. 2017)).) *But see Tanoh v. Dow Chem. Co.*, 561 F.3d 945, 953-56 (9th Cir. 2009) (finding that the plaintiffs' counsel could structure proposed mass actions to avoid federal jurisdiction, but drawing a contrast between mass actions and class actions, indicating that mass action precedents do not govern class actions brought under CAFA, and that class actions cannot necessarily be arbitrarily structured to avoid federal court jurisdiction). Thus, *Corber* and *Dunson* do not apply here. *See id.*

Moreover, and as the Attorney Defendants argue (ECF No. 82 at 12 n.6), *Corber* does not support the broad reading Plaintiffs advance here even if it did apply because there the Ninth Circuit said it would "hold plaintiffs responsible for what they have said and done[,]" and nonetheless concluded that case should not have been remanded. *Corber*, 771 F.3d at 1223. Here, Attorney Defendants reasonably argue that means the Court should hold Plaintiffs' counsel to the prior statements he made in *Alexander* and *Harris* about the size of the putative class. (ECF No. 82 at 12 n.6.) Finally, while Plaintiffs generally claim they can arbitrarily cap the size of their punitive class (ECF No. 62 at 14-

9

15), their attempt to do so here conflicts—at least analogously—with the Supreme Court's clear direction that plaintiffs cannot arbitrarily cap the amount of damages they seek to prevent a federal court from exercising CAFA jurisdiction in a class action. *See Standard Fire*, 568 U.S. 588 (holding that plaintiffs' counsel cannot stipulate to a damages amount less than $5 million to avoid CAFA jurisdiction). Thus, Plaintiffs' numerosity arguments rest on shaky legal foundations.

Indeed, instead of simply accepting Plaintiffs' arbitrary cap of 98 class members, the Court's task here is to evaluate the evidence proffered by both parties and determine whether the preponderance of the evidence shows the putative class likely includes more than 100 members. *See Dart Cherokee*, 574 U.S. at 87-89; *Leite*, 749 F.3d at 1121-23. Having considered the evidence proffered by the parties, it is more likely than not the putative class exceeds 100 members.

On the one hand, the Court finds the evidence submitted or referred to by Defendants meets their preponderance burden to show the putative class exceeds 100 members. Plaintiffs allege that over 900 people invested in Metalast. (ECF No. 1-3 at 13.) Mr. Harris states as much in his declaration filed with the Remand Motion, where he claims he maintains a database of "900 Member interests representing over 1,200 individuals." (ECF No. 62-1 at 2.) This also roughly aligns with the Chemeon Defendants' proffered service list from the 2013 MILLC receivership proceeding, reflecting that the receiver, Mr. Proctor, mailed out notice of the receivership proceeding to 990 MILLC members. (ECF No. 76 at 17 (citing ECF No. 77-2 at 18-45).) Taken together, this evidence shows the potential putative class here would be drawn from a larger group of over 900.

Of course, the proposed putative class only reflects investors from California or Nevada who were over 65 at the pertinent time, so the number of class members is logically fewer than 900. (ECF No. 1-3 at 9-10.) But statements by Plaintiffs' counsel and Mr. Harris in prior, related litigation suggest the number of class members is well over 100. In a prior deposition, Mr. Harris testified that probably about half of all people who invested in Metalast were retired. (ECF No. 76-4.) More tellingly, both Plaintiffs' counsel and Mr.

10

Harris submitted sworn declarations in prior, related litigation that the number of potential class members (of a class defined in a nearly identical way to the class in this case) was much higher than they now assert—from over 500, to under 100 (to support a motion to remand later abandoned), to 143, to 195. (ECF No. 76 at 10-11.) All of this leads the Court to find it is more likely than not the putative class exceeds 100 members.

On the other hand, Plaintiffs' declarations proffered with their Remand Motion offer inadmissible evidence and are otherwise unpersuasive. Both Plaintiffs' counsel and Mr. Harris are testifying to the content of an Excel spreadsheet, but do not proffer the Excel spreadsheet itself. (ECF Nos. 62-1, 62-2.) Neither declaration explains why they do not proffer the Excel spreadsheet itself, though both declarations allude to attorney-client privilege. (ECF Nos. 62-1 at 4, 62-2 at 5.) These declarations thus violate the best evidence rule. *See United States v. Bennett*, 363 F.3d 947, 952-54 (9th Cir. 2004) (finding that a proponent's testimony about a GPS system's data violated the best evidence rule and explaining that the best evidence rule requires a proponent to either produce the original or explain its absence if the proponent is testifying to the content of an electronic document but not providing either the original or a copy). Moreover, both declarations are largely hearsay, because they primarily offer the purported contents of the Excel spreadsheet for the truth of the matter asserted—that the putative class could not exceed 98 people. (ECF Nos. 62-1, 62-2.) *See also* Fed. R. Evid. 801(c) (defining hearsay in pertinent part as an out-of-court statement offered for the truth of the matter asserted); Fed. R. Evid. 802 (providing that hearsay is inadmissible).

And beyond those two issues, neither declaration is particularly reliable because they both contradict declarations offered on the same issue, by the same people, in very similar cases. (ECF No. 76 at 18-20.) In particular, Mr. Harris' declaration is hard to reconcile with his statements in discovery responses and depositions in other related cases—proffered by Defendants here (*id.* at 20)—that he had destroyed all records he had about Metalast, which would seem to include the very Excel spreadsheet he and Plaintiffs' counsel attempt to rely on through their declarations supporting the Remand

Motion. (ECF Nos. 76-2, 76-3, 76-4.) Moreover, Plaintiffs' counsel has a clear incentive to keep putative class membership below 100 to avoid this Court, casting doubt on the credibility of his declaration. This incentive is evidenced both by his attempt to impose an arbitrary cap in the Complaint and this very Remand Motion—not to mention Judge Staton's reasonable observation that Plaintiffs' counsel appears to be engaged in forum shopping to avoid the Court's unfavorable rulings in *Alexander* and *Harris*. (ECF No. 52 at 8.) Thus, the Court assigns little weight to Plaintiffs' proffered declarations.

Even if the Court were to assign some weight to Plaintiffs' proffered declarations, they are unpersuasive on their own terms. For example, Plaintiffs' counsel and Mr. Harris attribute part of the reduction getting them down to 'up to 98' plaintiffs from their prior declarations in related cases to excluding non-member spouses and deceased persons. (ECF Nos. 62-1 at 2, 62-2 at 4.) But Plaintiffs also try to define their proposed class as including "[a]ll members, investors, and their successors, in Metalast[,]" which could logically include both spouses and the successors of deceased people. (ECF No. 1-3 at 9.) And it certainly includes 'investors,' which sweeps more broadly than Mr. Harris and Plaintiffs' counsel's approach in their declarations of limiting the putative class to exclude "non-member spouses of members who did not hold legal title to any membership interests[.]" (*Compare* ECF No. 1-3 at 9-10 *with* ECF Nos. 62-1 at 2, 62-2 at 2.) Under CAFA, "the term 'class members' means the persons (named or unnamed) who fall within the definition of the proposed or certified class in a class action." 28 U.S.C. § 1332(d)(1)(D). Thus, the rationale for excluding certain potential plaintiffs offered in Plaintiffs' declarations offered does not follow, and indeed conflicts with how potential plaintiffs must be counted under CAFA.

In sum, Plaintiffs' proffered evidence is easily outweighed by Defendants', which establishes by a preponderance of the evidence that the putative class exceeds 100 members. The Court therefore finds that, contrary to Plaintiffs' arguments, both the minimal diversity and numerosity requirements for the Court to exercise CAFA jurisdiction are satisfied here. The Remand Motion is denied.

**V.     CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the Remand Motion.

It is therefore ordered that Plaintiffs' motion to remand (ECF No. 62) is denied.

It is further ordered that Plainitffs' *ex parte* motion regarding the motion to remand (ECF No. 72) is denied as moot.

DATED THIS 29th Day of October 2020.

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE